IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARCUS HAYES,

    *Plaintiff,*

v.

                                 Case No. 24-4030-EFM

SHAWNEE COUNTY BOARD OF
COUNTY COMMISSIONERS, and KWIK
STAFF,

    *Defendants.*

**MEMORANDUM AND ORDER**

In this Americans with Disabilities Act ("ADA")[1] civil action, Plaintiff Marcus Hayes, pro se, brings two claims against Defendant Shawnee County Board of County Commissioners ("the County") and one claim against Defendant Kwik Staff. Hayes contends Defendants wrongfully terminated him from his employment, and that the County failed to accommodate his disability in violation of the ADA. Before the Court are seven motions. Hayes brings three: a Motion for Judgement on the Pleadings, a Motion for Summary Judgment, and a second Motion for Summary Judgement (Docs. 61, 72, & 97). Kwik Staff also brings three: a Motion to Dismiss, a Motion for Summary Judgment, and a Motion to Strike (Docs. 41, 74, & 90). The County brings the remaining Motion for Summary Judgment (Doc. 76). For the reasons explained below, the Court dismisses

---

[1] 42 U.S.C. §§ 12101 *et seq.*, *as amended by* ADA Amendments Act of 2008 ("ADAAA"). Because the ADAAA primarily revised the ADA's definition of "disability," the Court may properly rely on authorities prior to the ADAAA's effective date regarding other ADA sections when relevant. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1303 n.1 (10th Cir. 2017).

the claim against Kwik Staff, denies judgment on the pleadings, and grants summary judgment in the County's favor.

## I.     Factual and Procedural Background[2]

Marcus Hayes worked as a custodian providing custodial services at the County's facilities for several years through various County contracts. Previously, he was employed by Arment Enterprise, L.L.C. ("Arment"), the company that the County contracted with for custodial services from 2018–2021. During this time, Brent Smith, the County's Building Supervisor, learned of Hayes's work. When the Arment contract ended, the County contracted with Kwik Staff, a temporary staffing agency, to obtain custodial services. Smith encouraged Hayes to apply to Kwik Staff, who hired Hayes and placed him at the Shawnee County North Annex to provide custodial services beginning September 14, 2021. Hayes's job responsibilities at the North Annex included removing trash from inside and outside the building, cleaning various rooms, and restocking supplies.

Hayes maintains he is disabled because of a Traumatic Brain Injury ("TBI") he suffered decades prior. He offers evidence of this through a disability certificate and medical bills dating back to 1995,[3] although the parties dispute whether Hayes is disabled within the meaning of the ADA. During his time at the North Annex, Hayes verbally informed Smith and Nelda Henning, the County's Director of Facilities Management, of his disability and that he could only work a limited number of hours each month to continue to receive Social Security disability benefits due to its income threshold. His hours were further limited when the County provided its Kwik Staff

---

[2] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts. The facts, where controverted, are noted as such.

[3] Hayes did not attach these documents to his Complaints or various motions, but they are found at Doc. 13 pp. 6–14.

-3-

custodians with a pay raise in 2022. Without Henning's knowledge, Smith arranged for Hayes to "bank" any hours he worked above his monthly limit to draw from later. Henning ceased this arrangement when she discovered it later that year, and Hayes was only permitted to work his monthly limited hours restriction each month.

Confined to his limited hours, Hayes's work accumulated. Smith began to perform Hayes's job duties when Hayes was unable to work due to reaching his hours limit. Eventually, Henning received a complaint from a county employee about a North Annex bathroom's lack of cleanliness and stocked supplies in February 2023. Smith and Henning realized that the North Annex custodial position required more hours than Hayes could work, and that no other available County custodial position could accommodate his hours.

This realization is reflected in an email exchange ("the Email") between Kwik Staff's Office Manager, Ozkar Chavira, and Henning. The Email's contents date February 28, 2023, while Hayes was still employed by Kwik Staff and working at the County's North Annex. The thread contains a message from Ozkar Chavira, Kwik Staff Office Manager, to Henning about a candidate for an open custodial position "at the annex location":

> Good morning Nelda,
> I interviewed a gentleman this morning that applied for your Janitorial position at the annex location. I'm hesitant but think he could be a good fit. if you don't mind a few things that could be considered red flags in some cases. Red flags, Due to social security benefits he is allotted to earn $1400 per month and can struggle with reading comprehension. He is confident is his janitorial abilities since he has done it for the majority of his life, and believes there would be not complaints on his work. Attached is his resume and ids please let me know if you think this is something we could manage to accommodate.

Henning responded:

> I am not worried about the read comprehension. But we have learned with Marcus, the position does require 40 hours per week. So his earning limit will be an issue.
>
> Thank you for forwardin this applicant, but at this time we will need to pass.
>
> Nelda Henning
> Facilities Management

At some point, Kwik Staff informed Henning that it had an alternative placement available for Hayes. On March 31, 2023, Smith informed Hayes that his placement at the County would end on April 7, 2023. When Kwik Staff offered Hayes the alternative assignment that could accommodate his limited hours restriction, he declined it because he did not want to work the evening hours it required. Hayes stopped working for Kwik Staff altogether and has not worked through Kwik Staff since.

Shortly afterwards, Hayes filed complaints against the County and Kwik Staff with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his disability. KHRC issued a No Probable Cause finding, which the EEOC adopted, and the EEOC issued a right-to-sue letter in both cases to Hayes on January 11, 2024. Hayes does not recall the date he received the letters. Hayes commenced this civil action under the ADA by filing his initial Complaint against the County on April 18, 2024. Kwik Staff did not become part of this action until Hayes filed his Amended Complaint on September 19, 2024. Of the several motions filed, Kwik Staff moves to dismiss, Hayes moves for judgment on the pleadings, and all three parties move for summary judgment.

## II. Legal Standards

### A. Dismissal Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[4] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[5] A claim is facially plausible if a plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[6] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7]

### B. Judgment on the Pleadings Under Rule 12(c)

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."[8] The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[9] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[10] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[11] "If the motion is brought by the plaintiff, the

---

[4] FED. R. CIV. P. 12(b)(6).

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] FED. R. CIV. P. 12(c).

[9] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[10] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted).

[11] *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (citations and quotations omitted), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir.

'critical question is whether the defendant's answer raises issues of fact that would defeat the plaintiff's recovery.'"[12] Documents attached to the pleadings are exhibits and may be considered in deciding a Rule 12(c) motion.[13] These documents, however, "may only be considered to show their contents, not to prove the truth of matters asserted therein."[14]

C.  **Summary Judgment Under Rule 56(a)**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[15] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[16] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[17] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[18] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[19] The

---

2013).

[12] *Smith v. Amazon.com Servs. LLC*, 2021 WL 5371481, at *1 (D. Kan. 2021) (quoting *Volvo Fin. Servs. v. JRD Contracting, Inc.*, 2017 WL 8941065, at *2 (S.D. Ala. 2017)).

[13] *Park Univ. Enters.*, 442 F.3d at 1244.

[14] *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) (citation omitted).

[15] FED. R. CIV. P. 56(a).

[16] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[17] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[18] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[19] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

-7-

court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[20]

This same standard applies to cross motions for summary judgment.[21] Each party bears the burden of establishing that no genuine issue of material fact exists and entitlement to judgment as a matter of law.[22] "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[23] But where the cross motions overlap, the Court may permissibly address the legal arguments together.[24] Each motion is viewed in the light most favorable to its nonmoving party.[25]

**D.    Pro Se Pleadings**

Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers."[26] A pro se litigant is entitled to a liberal construction of his pleadings.[27] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."[28] It is not, however, the

---

[20] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[21] *R.C. by S.P. v. J.C.*, 736 F. Supp. 3d 1060, 1057 (D. Kan. 2024).

[22] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[23] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citation omitted).

[24] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

[25] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[26] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[27] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[28] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

proper role of a district court to "assume the role of advocate for the pro se litigant."[29] As it relates to motions to dismiss generally, the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff."[30] "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inferences that the defendant is liable for the misconduct alleged."[31]

### III.    Analysis

**A.    Kwik Staff's Motion to Dismiss**[32]

42 U.S.C. § 2000e-5 governs the procedure to file a claim under the ADA.[33] To properly file, potential plaintiffs must sue within 90 days of receiving their EEOC right-to-sue letter.[34] Compliance with the 90-day requirement functions as a statute of limitations on the suit rather than a jurisdictional prerequisite.[35] A motion to dismiss for failure to file an action within this period is, therefore, considered under Rule 12(b)(6).[36] In such a motion, the plaintiff bears the burden to establish the filing requirement is met.[37] Failure to meet this burden results in the discrimination claim's dismissal.[38]

---

[29] *Id.*

[30] *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

[31] *Iqbal*, 556 U.S. at 678.

[32] Although the factual recitation above contained the uncontroverted facts, the Court recognizes and complies with its obligation to accept as true the facts contained in Plaintiff's Amended Complaint for purposes of Kwik Staff's Motion to Dismiss.

[33] *See* 42 U.S.C. § 12117(a) (incorporating § 2000e-5 into the ADA's enforcement provision).

[34] § 2000e-5(f)(1).

[35] *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995).

[36] *Barrett v. Rumsfeld*, 158 F. App'x 89, 91 (10th Cir. 2005).

[37] *See Stambaugh v. Kansas Dep't of Corr.*, 844 F. Supp. 1431, 1433 (D. Kan. 1994).

[38] *Id.*

Here, the EEOC concluded its investigation into Hayes's discrimination claim against Kwik Staff and issued a right-to-sue letter to him on January 11, 2024. Because the receipt date of the letter is unknown, the Court presumes Hayes received this letter five days afterwards.[39] Hayes timely commenced this action on April 15, 2024, by filing his initial Complaint against the County as the sole Defendant. But Kwik Staff was not named as a Defendant until Hayes filed his Amended Complaint on September 19, 2024—approximately eight months after receiving the right-to-sue letter and beyond the 90-day requirement. This delay is the primary basis of Kwik Staff's Motion to Dismiss.

Responding to the Motion to Dismiss, Hayes asserts that the delay in naming Kwik Staff as a Defendant is because he was unaware of his claim against Kwik Staff until receiving the Email from the County in discovery. Hayes also generally alleges that the conclusion of his employment is the result of both the County and Kwik Staff's discrimination against him. Construing Hayes's pleadings broadly raises the issues of whether Plaintiff's assertion merits tolling of the 90-day requirement and whether his claim against Kwik Staff relates back to the date of the initial Complaint.

    1.    *Equitable Tolling of the 90-Day Requirement is Inappropriate*

As a functional statute of limitations, the ADA's 90-day requirement to bring suit is subject to the doctrine of equitable tolling.[40] The 90-day requirement "will be tolled *only* if there has been active deception of the claimant regarding procedural requirements."[41] Active deception occurs when a plaintiff is "actively misled," "lulled into inaction," or "has in some extraordinary way

---

[39] *See Lozano v. Ashcroft*, 258 F.3d 1160, 1164–65 (10th Cir. 2001) (approving a five-day presumption of receipt after a right-to-sue letter's mailing "whenever the actual receipt date is unknown or disputed").

[40] *See Jarrett v. US Sprint Commc'ns. Co.*, 22 F.3d 256, 259–60 (10th Cir. 1994).

[41] *Id.* at 260 (emphasis in original).

been prevented from asserting his or her rights."[42] Courts narrowly construe these exceptions and Hayes bears the burden to establish the reasons meriting equitable tolling.[43]

Here, Hayes fails to establish reasons meriting equitable tolling. Hayes does not claim that any relevant party or entity actively misled him or lulled him into inaction, nor does he allude to any extraordinary circumstances that prevented him from asserting his rights.[44] His assertion that he was unaware of his claim against Kwik Staff until he received the Email in discovery does not establish any form of active deception either. Further, prior to suit, Hayes filed a discrimination claim against Kwik Staff with the EEOC and attached his right-to-sue letter from that investigation in the initial Complaint. These actions indicate Hayes's knowledge of his claim against Kwik Staff prior to receiving the County's disclosures. Accordingly, there is no "active deception" meriting equitable tolling of the 90-day requirement for Hayes's claim against Kwik Staff.

2.  *Hayes's Amendment Does Not Relate Back to the Initial Complaint*

Because the 90-day requirement is not tolled in this case, Hayes's Amended Complaint is only valid against Kwik Staff if the amendment relates back to the original date of the initial Complaint under Rule 15(c). Rule 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations."[45] Under Rule 15(c), an amendment adding a new defendant arising out of the same conduct alleged in the initial complaint relates back when the new defendant

---

[42] *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996) (citations and quotations omitted).

[43] *Id.*; *Barela v. Muniz*, 930 F.2d 32 (Table), 1991 WL 49741, at *3 (10th Cir. 1991).

[44] Hayes's pro se status is not an extraordinary circumstance that prevents him from asserting his rights; he has demonstrated that he can navigate the Court's filing system but has simply done so too late against Kwik Staff. *See Castaldo v Denver Pub. Sch.*, 276 F. App'x 839, 842 (10th Cir. 2008).

[45] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

(1) "received such notice of the action that it will not be prejudiced in defending on the merits"; and (2) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[46]

Here, Kwik Staff contends that neither of these requirements are met. Kwik Staff relies on Hayes's references to Kwik Staff in his initial Complaint to argue that he did not make a mistake as to its identity. But "[t]hat a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity" under Rule 15(c).[47] Nonetheless, Hayes has not shown that Kwik Staff knew or should have known this action would be brought against it, nor has he shown that Kwik Staff received notice of this action prior to being served with the Amended Complaint. Accordingly, the Amended Complaint against Kwik Staff does not relate back to the date of the initial Complaint.

Neither the doctrines of equitable tolling nor relation back save Hayes's claim against Kwik Staff from the 90-day requirement to file suit. Accordingly, Hayes's claim against Kwik Staff is barred and dismissal is appropriate under Rule 12(b)(6).

**B.      Plaintiff's Motion for Judgment on the Pleadings**

Because the Court grants Kwik Staff's Motion to Dismiss, it considers Kwik Staff's other motions moot and only considers Hayes's Rule 12(c) Motion for Judgment on the Pleadings as filed against the County. In his Motion, Hayes relies solely on the Email to argue for judgment in his favor arguing it establishes that the County knew Mr. Hayes is disabled and "knew what they were doing."[48] Even if proved, knowledge alone does not establish the entirety of Hayes's

---

[46] FED. R. CIV. P. 15(c)(1)(C)(i)–(ii).

[47] *Krupski*, 560 U.S. at 549.

[48] Doc. 61 at 1.

discrimination claims against the County.[49] Further, Hayes does not address the County's Answer, which disputes several material allegations made in the initial Complaint against the County and raises several affirmative defenses. Both actions ordinarily bar judgment on the pleadings.[50] Hayes fails to establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. Accordingly, he is not entitled to judgment on the pleadings.

**C.     Motions for Summary Judgment**

Three motions remain: Hayes's and the County's cross motions for summary judgment and a second summary judgment motion by Hayes. The Court does not consider Hayes's second motion as it was filed without the Court's leave on June 27, 2025—well past the dispositive motions deadline of April 7, 2025.[51] The Court considers the remaining summary judgment motions together because both require analyzing Hayes's claims against the County under the ADA.[52]

The ADA provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or *discharge of employees*, employee compensation, job training, and other terms, conditions, and privileges of employment.[53]

---

[49] *See Edmonds-Radford v. Southwest Airlines Co.*, 17 F.4th 975, 989–90, 992 (10th Cir. 2021) (describing the elements of the prima facie cases for wrongful termination and failure to accommodate claims under the ADA).

[50] *See Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 231 (9th Cir. 1989) ("[A] plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery. Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings.").

[51] *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) ("Although we construe [plaintiff's] pleadings liberally because he is a pro se litigant, he nevertheless must follow the same rules of procedure that govern other litigants.").

[52] *See Berges*, 704 F. Supp. 2d at 1155.

[53] 42 U.S.C. § 12112(a) (emphasis added).

The ADA also states that discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee."[54]

When considering ADA discrimination claims on summary judgment, the Court applies the *McDonnel Douglas* burden-shifting approach.[55] Hayes bears the initial burden as Plaintiff to establish a prima facie case of discrimination.[56] If successful, the burden shifts to the County to articulate a legitimate, non-discriminatory reason for its conduct.[57] Upon doing so, the burden shifts back to Hayes to show that the County's justification is merely a pretext designed to mask discrimination.[58] Summary judgment should be denied if there remains any genuine evidence supporting each element of Hayes's prima facie case or disputing the County's rebuttal, if applicable.[59]

Hayes brings an ADA failure to accommodate claim and a wrongful termination claim against the County. A prima facie case for both claims require Hayes to show that he is (1) a "disabled" person as defined by the ADA; and (2) "qualified" as defined by the ADA.[60] The claims have separate third requirements.[61] Failure to accommodate requires that Hayes requested, and was denied, a plausibly reasonable accommodation based on his disability whereas wrongful

---

[54] § 12112(b)(5)(A).

[55] *Dewitt*, 845 F.3d at 1306; *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)).

[56] *Carter*, 662 F.3d at 1141.

[57] *Id.*

[58] *Id.*

[59] *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999).

[60] *Edmonds-Radford*, 17 F.4th at 989, 992.

[61] *Id.* at 989–90, 992.

termination requires that Hayes show he suffered adverse employment action because of his disability.[62]

Here, Hayes does not invoke the elements of his prima facie case directly to argue for summary judgment in his favor. Instead, Hayes spends a significant portion of his Motion for Summary Judgment arguing that the County was aware of his disability, continuing to rely on the Email, but also two videos recording conversations between Hayes, Smith, and Henning about his work availability.[63] For its part, the County admits Hayes verbally informed Smith and Henning that he is disabled and has a limited hours restriction to continue receiving disability benefits but denies that the Email or videos establish the elements of his prima facie cases.

The Court has reviewed both the Email and videos that Hayes relies on to argue for judgment in his favor, but these do not establish his prima facie cases against the County. The relevant portions of the videos show that Hayes discussed his hours limitation requirement with Smith and Henning, which the County freely admits. The Email largely concerns Henning's consideration of a new job applicant for an open job position. Henning merely refers to Hayes—who was presently working at the North Annex on the Email's date—to explain why she denied the new applicant the open job position since both Hayes and the applicant had a limited hours restriction that the job could not accommodate. This evidence only establishes that Hayes receives disability benefits, has a limited hours restriction, and the County's awareness of such information; it is not enough to establish a prima facie case under the ADA.

As for whether Hayes establishes the elements of his prima facie cases elsewhere, Hayes

---

[62] *Id.*

[63] Both videos largely depict the floor below the cameraman or a black screen while recording the conversations in the room. Although there is no visual identification of the speaking parties, the County admits that the conversations recorded were between Hayes, Smith, and Henning.

submits evidence of a disability certificate and medical bills regarding a TBI he suffered in 1995. But even if Hayes successfully establishes that he is disabled under the ADA because of the TBI, and that the County was aware of this, he does not establish the other elements of his prima facie case for failure to accommodate or wrongful termination. To be "qualified" under the ADA, an individual must be able to perform the essential functions of their employment position with or without accommodation.[64] One such accommodation may include providing "part-time or modified work schedules,"[65] such as the one Hayes requested due to his limited hours restriction. "[A]n employee who proposes this accommodation may only prevail in an ADA action if he can demonstrate that he could perform the essential functions of the job while working part-time."[66]

While the County accommodated Hayes's limited hours restriction for a time, Hayes was ultimately unable to fully perform the essential functions of his job—cleaning, trash removal, and restocking—within his availability. Hayes's supervisor, Smith, had to perform Hayes's job duties in his absence to make up for work he was unable to complete and even so, the County received a formal complaint about the lack of cleanliness and supplies in a North Annex bathroom. The essential functions of Hayes's job simply required more than part-time hours to complete. Hayes did not request any other accommodation from the County and, therefore, fails to establish a prima facie case for his ADA failure to accommodate claim.

Hayes also fails to establish a prima facie case for his wrongful termination claim, which requires that he "present some affirmative evidence that disability was a determining factor in the employer's decision" to discharge him.[67] Notably, Hayes was never a County employee, he was a

---

[64] *Aubrey v. Koppes*, 975 F.3d 995, 1006 (10th Cir. 2020) (citations omitted).

[65] 42 U.S.C. § 12111(9)(B).

[66] *See Carter*, 662 F.3d at 1146 (citation omitted).

[67] *Smith v. Millennium Rail, Inc.*, 241 F. Supp. 3d 1183, 1203 (D. Kan. 2017) (quoting *Morgan v. Hilti. Inc.*,

Kwik Staff employee. The County did not have authority to discharge Hayes from his position at Kwik Staff; it merely released Hayes from his placement at the North Annex back to Kwik Staff when it became clear the position required an employee capable of working more hours. Upon returning to Kwik Staff, Kwik Staff offered Hayes a different assignment that could accommodate his hours, but he declined it because he did not want to work during the required evening hours. Nothing else in the record suggests that Hayes suffered adverse employment simply because he suffered a TBI. Accordingly, Hayes also fails to make a prima facie case for ADA termination, and the County is entitled to judgment on both discrimination claims.

## IV.    Conclusion

For the reasons discussed above, the Court dismisses the claim against Kwik Staff and, accordingly, consider Kwik Staff's other motions moot. The Court also denies Hayes's Motion for Judgment on the Pleadings and his first Motion for Summary Judgment; the Court does not consider Hayes's Second Motion for Summary Judgment as it was untimely filed. Finally, the Court grants the County's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED** that Defendant Kwik Staff's Motion to Dismiss (Doc. 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Kwik Staff's Motion for Summary Judgment (Doc. 74) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant Kwik Staff's Motion to Strike (Doc. 90) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 61) is **DENIED**.

---

108 F.3d 1319, 1323 (10th Cir. 1997).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 72) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's second Motion for Sum for Summary Judgment (Doc. 97) is **DENIED as filed out of time**.

**IT IS FURTHER ORDERED** that Defendant Shawnee County Board of County Commissioners' Motion for Summary Judgment (Doc. 76) is **GRANTED**.

**IT IS SO ORDERED.**

This case is closed.

Dated this 25th day of August, 2025.

*Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE